**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| RUBEN ODELL BOULWARE, | ) | NO. CV 09-4325-R(E) |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM AND ORDER DISMISSING |
| | ) | |
| DEPARTMENT OF INSURANCE, | ) | COMPLAINT WITH LEAVE TO AMEND |
| et. al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

For the reasons discussed below, the Complaint is dismissed with leave to amend.  See 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

**PROCEEDINGS**

Plaintiff, a state prisoner proceeding pro se, lodged a "Civil Rights Complaint" on June 16, 2009.  On June 30, 2009, the Court issued an Order denying Plaintiff leave to file the action without prepayment of the full filing fee, accompanied by an explanatory Attachment ("Attachment").  On August 5, 2009, Plaintiff filed a "Motion for Reconsideration Pursuant to Local Rule 7-18" ("Motion for

1   Reconsideration"). On August 7, 2009, the Court issued an Order
2   permitting Plaintiff to file the Complaint without prepayment of the
3   full filing fee, and the Complaint was filed on that date.

4

5                              **BACKGROUND**

6

7       Plaintiff's claims arise out of his conviction in 2003 on two
8   counts of worker's compensation fraud in violation of California
9   Insurance Code section 1871.4(a)(1) and one count of insurance fraud
10  in violation of California Penal Code section 550(a)(1). See People
11  v. Boulware, 2004 WL 2384372 (Cal. Ct. App., Oct. 26, 2004). The
12  worker's compensation fraud convictions were based on evidence that
13  Plaintiff knowingly failed to disclose to examining physicians a
14  previous injury that was material to the evaluation of Plaintiff's
15  worker's compensation claim. The insurance fraud conviction was based
16  on evidence that, in support of Plaintiff's claim concerning an injury
17  allegedly received at a Von's market, Plaintiff submitted a
18  physician's receipt reflecting payment in connection with a different
19  injury.

20

21      On January 5, 2007, this Court entered judgment granting
22  conditional habeas relief with respect to Plaintiff's worker's
23  compensation fraud convictions only. See Boulware v. Ollison, CV 06-
24  3744-R(E). This Court also determined that the evidence sufficed to
25  support the worker's compensation fraud convictions, and that
26  Plaintiff was not entitled to habeas relief on his insurance fraud
27  conviction. The State subsequently announced that it was unable to
28  proceed with a retrial of the worker's compensation counts, and the

1   state court dismissed those counts.  See Boulware v. Marshall, 621

2   F. Supp. 2d 882, 886 (C.D. Cal. 2008).  The state court resentenced

3   Plaintiff on the insurance fraud count.  Id.  Plaintiff filed a habeas

4   petition in this Court challenging the resentencing.  See Boulware v.

5   Marshall, CV 08-4665-R(E).  On December 9, 2008, this Court denied the

6   petition.  See Boulware v. Marshall, 621 F. Supp. 2d 882 (C.D. Cal.

7   2008).

8

9       The present Complaint purports to allege civil rights violations

10  pursuant to 42 U.S.C. sections 1983 and 1985(2), violations of the

11  Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C.

12  §§ 1961-68, and a state law malicious prosecution claim.  Defendants

13  are: (1) California Department of Insurance ("DOI") Commissioner Steve

14  Poizner, in his individual and official capacity; (2) former DOI

15  Commissioners Harry Low and John Garamendi, in their individual

16  capacities only; (3) DOI "fraud division agents" Shawn Ferris, Ruby

17  Favis, Willie Lawrence, Kimberly Staal, Daniel McKerren and Barbra

18  Bridgewater, in their individual and official capacities; (4) twenty

19  insurance companies; (5) Los Angeles County deputy district attorneys

20  Lance Wong and David Wells; (6) private attorney Gene Shioda;

21  (7) private party Paul Cain III; and (8) fictitious "Doe" Defendant

22  DOI agents, insurance companies and deputy district attorneys.

23

24               **SUMMARY OF PLAINTIFF'S ALLEGATIONS**

25

26      The Complaint is somewhat confusing, but appears to allege the

27  following:

28  ///

3

In 1999, Plaintiff allegedly filed a worker's compensation claim after assertedly sustaining an on-the-job injury to his shoulder while working for Defendant Cain (Complaint, pp. 18, 24-25). Defendants Cain and Shioda allegedly delayed the Worker's Compensation Appeals Board ("WCAB") trial for years (id., p. 18). Defendants Cain, Shioda and Staal allegedly attempted to stop the WCAB proceeding by asserting that Plaintiff had committed fraud (id., p. 18). Defendant Shioda allegedly falsely told the California Department of Insurance Fraud Division that Plaintiff was an independent contractor (id., p. 25). Shioda's assertedly fraudulent complaints to the Fraud Division allegedly resulted in an official investigation of Plaintiff (id., p. 25). Plaintiff alleges that Cain was an "illegally uninsured employer," and that DOI officials had no power to investigate claims of insurance fraud made by an uninsured employer (Complaint, p. 19). Defendants Ferris and Lawrence allegedly caused Plaintiff's parole to be revoked on October 12, 2000 based on assertedly false allegations of worker's compensation fraud, as a result of which Plaintiff allegedly was incarcerated for a year (id., p. 26).

On January 5, 2000, Plaintiff allegedly cut his finger on a piece of shelving at Von's market (id., p. 19). On January 7, 2000, Von's manager John Robinson allegedly telephoned Plaintiff and instructed Plaintiff to obtain a receipt for the injuries so that Von's could pay Plaintiff (id., p. 19). On January 7, 2000, the office manager at the office of the doctor who was treating Plaintiff's shoulder injury allegedly authorized Irene Ochoa to treat Plaintiff's cut thumb, and allegedly instructed the billing clerk, Maria Alvarez, to write a receipt for this treatment (id., p. 20). On January 10, 2000,

4

Robinson allegedly told Plaintiff the claim was denied (id.).

On September 13, 2002, a WCAB judge allegedly entered judgment for Plaintiff in the amount of $20,000 on Plaintiff's worker's compensation claim (id.).  On September 17, 2002, Defendants McKerren and Staal interviewed Alvarez (id.).  On October 29, 2002, Alvarez allegedly told Defendant McKerren that she did not write or recognize the handwriting on the doctor's receipt given to Plaintiff (id.).  On November 6, 2002, Defendants Staal and McKerren allegedly interviewed Robinson concerning Plaintiff's claim regarding the alleged Von's injury (id., p. 21).  On December 17, 2002, Defendant Staal allegedly filed a report identifying Cain as a victim of worker's compensation fraud and identifying Von's as the victim of attempted grand theft (id.).  On January 7, 2003, Defendants Staal and Wells allegedly obtained a warrant for Plaintiff's arrest, without probable cause, for worker's compensation fraud and insurance fraud (id., pp. 22, 28).  Defendants Staal and Wells allegedly omitted facts from the warrant application (id., pp. 28-29).  Plaintiff was arrested on January 9, 2003 (id., p. 28).

On July 7, 2003, Defendants Staal and Wells allegedly instructed Alvarez to change Alvarez' initial statement concerning Plaintiff's asserted finger injury (id.).  On March 10, 2003, Defendant Wells allegedly instructed Staal to induce Alvarez to change Alvarez' statement identifying the person who wrote the doctor's receipt (id., p. 22).  Defendants Staal and Wells allegedly instructed Alvarez to fabricate her statement (id.).  Based on these alleged "fabricated facts and omissions," Plaintiff was "falsely convicted" (id.).

5

The Complaint contains four claims for relief, alleging: (1) violation of RICO, 18 U.S.C. section 1962(b); (2) malicious prosecution; (3) violation of Plaintiff's civil rights protected by the First, Fourth and Eighth Amendments and Due Process, pursuant to 42 U.S.C. section 1983; and (4) conspiracy to violate civil rights pursuant to 42 U.S.C. section 1985(3).

In his RICO claim, Plaintiff alleges that Defendants Poizner, Low, Garamendi, Favis, Ferris, Lawrence, Staal, Bridgewater, McKerren, Wong and Wells, and the Defendant insurance companies, allegedly violated RICO through a pattern of racketeering activity "by allowing private parties (insurance companies) to directly pay the salaries of public prosecutors for the investigation, prosecution, conviction and collection of restitution for insurance fraud related crimes" (Complaint, pp. 15-16). Plaintiff contends that, pursuant to the California Insurance Fraud Prevention Act, California Insurance Code section 1871 et seq., the Defendant insurance companies bear the cost of the administration and operation of the DOI's fraud division pursuant to an alleged "pay-for-prosecutions" scheme (Complaint, pp. 16-18). According to Plaintiff, pursuant to California Insurance Code sections 1872.83(b)(4) and 1872.83(d),[1] Defendants Poizner, Low

---

[1]    Section 1872.83(b) establishes a Fraud Assessment Commission for the purpose of establishing and administering an industry assessment to fund "increased investigation and prosecution of workers' compensation fraud, and of willful failure to secure payment of workers' compensation, in violation of Section 3700.5 of the Labor Code."  Section 1872.83(b)(4) provides:

     (4) The amount collected, together with the fines collected for violations of the unlawful acts specified
(continued...)

and Garamendi allegedly distributed these assertedly private funds to the DOI Fraud Division and the Los Angeles County District Attorney's Office Worker's Compensation Insurance Fraud Division, and to public prosecutors prosecuting insurance fraud crimes (Complaint, pp. 17-18,

[1](...continued)
in Sections 1871.4, 11760, and 11880, Section 3700.5 of the Labor Code, and Section 549 of the Penal Code, shall be deposited in the Workers' Compensation Fraud Account in the Insurance Fund, which is hereby created, and may be used, upon appropriation by the Legislature, only for enhanced investigation and prosecution of workers' compensation fraud and of willful failure to secure payment of workers' compensation as provided in this section.

Section 1872.83(d) provides:

After incidental expenses, at least 40 percent of the funds to be used for the purposes of this section shall be provided to the Fraud Division of the Department of Insurance for enhanced investigative efforts, and at least 40 percent of the funds shall be distributed to district attorneys, pursuant to a determination by the commissioner with the advice and consent of the division and the Fraud Assessment Commission, as to the most effective distribution of moneys for purposes of the investigation and prosecution of workers' compensation fraud cases and cases relating to the willful failure to secure the payment of workers' compensation.  Each district attorney seeking a portion of the funds shall submit to the commissioner an application setting forth in detail the proposed use of any funds provided.  A district attorney receiving funds pursuant to this subdivision shall submit an annual report to the commissioner with respect to the success of his or her efforts.  Upon receipt, the commissioner shall provide copies to the Fraud Division and the Fraud Assessment Commission of any application, annual report, or other documents with respect to the allocation of money pursuant to this subdivision.  Both the application for moneys and the distribution of moneys shall be public documents.  Information submitted to the commissioner pursuant to this section concerning criminal investigations, whether active or inactive, shall be confidential.

28).  Pursuant to this alleged "racketeering scheme," Defendants assertedly falsely accused, arrested, prosecuted and convicted Plaintiff for worker's compensation fraud and insurance fraud (id., pp. 10-12).

In his malicious prosecution claim, Plaintiff alleges that Defendants Garamendi, Favis, Ferris, Lawrence, Staal, McKerran and Bridgewater conducted an investigation of Plaintiff for worker's compensation fraud against an allegedly "illegally uninsured employer," Defendant Cain (Complaint, p. 11).  These Defendants allegedly conducted the investigation without probable cause and with malice, and allegedly instituted the criminal case against Plaintiff falsely (id.).  Plaintiff alleges that the worker's compensation fraud proceedings "ended in the Plaintiff's favor when the Deputy District Attorney dismissed both counts of workers compensation fraud . . ." (id., p. 12).

In his civil rights claim, Plaintiff alleges that Defendants Favis, Ferris, Staal, Lawrence, Bridgewater, McKerren, Cain, Shioda, and Wells conspired to prosecute Plaintiff falsely for worker's compensation fraud in retaliation for Plaintiff's filing of a worker's compensation claim, allegedly in violation of the First Amendment, the Fourth Amendment, the Eighth Amendment, and Due Process (id., pp. 12-15, 31-32).

///

///

In his "civil conspiracy" claim, brought pursuant to 42 U.S.C. section 1985(3), Plaintiff alleges that Defendants conspired to

1   "annul" Plaintiff's $20,000 WCAB judgment, and to prosecute Plaintiff

2   falsely for worker's compensation fraud and insurance fraud,

3   assertedly causing Plaintiff to be incarcerated for "well over 6

4   years" (id., pp. 33-34).

5

6       Plaintiff seeks injunctive relief on his RICO claim, in the form

7   of an order: (1) directing Defendants Poizner, Wong, Wells and/or

8   their successors not to retaliate against Plaintiff for the filing of

9   this lawsuit; (2) directing Defendants Poizner, Ferris, Favis, Staal,

10  Lawrence, McKerren, Bridgewater, Wong, Wells, "Fraud Division," and

11  "Los Angeles District Attorneys Workers Compensation Fraud Division"[2]

12  "immediately [to] cease the 'pay-for-prosecutions program' that allows

13  private funds of the 'defendant insurers' to pay the salaries of

14  public prosecutors to prosecute and convict persons of insurance fraud

15  related crimes"; and (3) directing "named and unnamed insurance

16  companies" authorized to write insurance in the State of California

17  "immediately [to] cease the practice of using their monies to pay

18  public prosecutors to investigate, prosecute and convict persons of

19  insurance fraud related crime" (Complaint, pp. 35-36).

20

21      Plaintiff seeks declaratory relief in the form of a declaration

22  that: (1) Defendants Poizner, Low, Garamendi, Favis, Ferris, Lawrence,

23  Staal, Bridgewater, McKerren, and fictitious Defendants "of the Fraud

24  Division" purportedly lacked statutory authority or probable cause "to

25  investigate an illegally uninsured employer[']s allegations of

26  _____

27      [2]   It is unclear whether Plaintiff intends to sue
    separately the DOI Fraud Division or the Los Angeles County
28  District Attorney's Office Worker's Compensation Fraud Division.

1  insurance fraud, and Von's claim was not an insurance claim";
2  (2) Defendants Low, Garamendi, Favis, Ferris, Lawrence, Staal,
3  Bridgewater, McKerren, and fictitious Defendants "of the Fraud
4  Division" assertedly knew that Defendant Cain "was in fact illegally
5  uninsured prior to initiating the criminal investigation into
6  worker[']s compensation insurance fraud"; (3) Defendants Poizner,
7  Garamendi, and Low allegedly "received private funds from 'defendant
8  insurers' for the purpose of investigating, prosecuting, and
9  convicting persons accused of insurance fraud related crimes" and
10 "used these private funds to pay the salaries of public prosecutors";
11 (4) both counts of worker's compensation fraud convictions were
12 reversed and dismissed on May 2, 2007, by the Los Angeles County
13 District Attorney's Office "in amended complaint BA241206"; (5) "the
14 claim filed by the Plaintiff against Von's was not an insurance claim
15 pursuant to California Penal Code section 550(a)(1)"; (6) Defendants
16 "directly or indirectly injured the plaintiff's business and property
17 by violating plaintiff's First, Fourth, Eighth and Fourteenth
18 Amendments [sic] to the United States Constitution"; and (7) the
19 Department of Insurance, Fraud Division, named and unnamed "defendant
20 insurers" and the Los Angeles County District Attorney's Office
21 Worker's Compensation Fraud Division "is [sic] an enterprise pursuant
22 to RICO statute" (id., pp. 36-37).

23

24     Plaintiff also seeks: (1) compensatory damages in the sum of
25 twenty-five million dollars, purportedly to be trebled under RICO;
26 (2) the $20,000 WCAB judgment; (3) economic damages in the sum of
27 $249,600 based on Plaintiff's alleged loss of business opportunities
28 as the alleged owner-operator of a trucking company; (4) punitive

1  damages in the sum of $1 million each from Defendants Ferris, Favis

2  and Staal; and (5) punitive damages in the sum of $500,000 each from

3  Defendants Lawrence, McKerren, Bridgewater, Shioda and Cain (id.,

4  pp. 38-39).

5

6                              **DISCUSSION**

7

8  **I.    Eleventh Amendment**

9

10       The Eleventh Amendment bars suits in federal court for money

11  damages against state officials in their official capacities.  See

12  Will v. Michigan Department of State Police, 491 U.S. 58, 71 (1989);

13  Romano v. Bible, 169 F.3d 1182, 1185 (9th Cir. 1999), cert. denied,

14  528 U.S. 816 (1999); Bair v. Krug, 853 F.2d 672, 675-76 (9th Cir.

15  1998) (Eleventh Amendment barred RICO and state law claims against

16  state officials in their official capacities).  Thus, Plaintiff may

17  not sue the state official defendants for damages in their official

18  capacities.[3]

19  ///

20  ///

21  ///

22  **II.   _Heck v. Humphrey_ Bars Plaintiff's Claims Implying the Invalidity**

23  **      of His Insurance Fraud Conviction.**

24

25  _____

26       [3]   In his Motion for Reconsideration, Plaintiff contends
    that his official capacity claims against Defendants Poizner,
    Favis, Ferris, Lawrence, Staal, McKerren and Bridgewater are
27  limited to claims for injunctive and declaratory relief only,
    pursuant to Ex Parte Young, 209 U.S. 123 (1908).  However, this
28  alleged limitation is not clear from the Complaint.

In <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994), the United States Supreme Court held that, in order to pursue a claim for damages arising out of an allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a civil rights plaintiff must prove that the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." <u>Id.</u> at 486-87. "A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983." <u>Id.</u> at 487. <u>Heck</u> applies to claims for conspiracy brought pursuant to 42 U.S.C. section 1985(3). <u>See</u> <u>McQuillion v. Schwarzenegger</u>, 369 F.3d 1091, 1097 n.4 (9th Cir. 2004). <u>Heck</u> also applies to RICO claims. <u>See</u> <u>Oberg v. Ausotin County</u>, 310 Fed. App'x 144, 145 (9th Cir. 2009); <u>Swan v. Barbadoro</u>, 520 F.3d 24, 25 (1st Cir. 2008).

The Complaint clearly implicates the validity of Plaintiff's insurance fraud conviction.  Plaintiff does not plead that any court has overturned his insurance fraud conviction or otherwise invalidated it.  Hence, all of Plaintiff's claims implicating the validity of his insurance fraud conviction are barred by <u>Heck</u>. <u>See</u> <u>Heck</u>, 512 U.S. at 479, 490 (upholding dismissal of civil rights action for damages alleging that two prosecutors and a police investigator had engaged in an unlawful investigation and arrest, knowingly destroyed exculpatory evidence, and caused an unlawful voice identification procedure to be used at the plaintiff's trial); <u>Guerrero v. Gates</u>, 442 F.3d 697, 703-

04 (9th Cir. 2006) (claims for false arrest, malicious prosecution, and conspiracy to bring false charges against plaintiff barred by Heck); Smithart v. Towery, 79 F.3d 951, 952 (9th Cir. 1996) (where plaintiff entered "Alford" plea[4] to criminal charges, "no question" that Heck barred plaintiff's claims that defendants lacked probable cause to arrest him and brought unfounded criminal charges against him).

**III.  The Defendant Prosecutors Are Immune From Liability for Damages for Initiating and Pursuing the Criminal Proceedings Against Plaintiff.**

A prosecutor is shielded by absolute prosecutorial immunity for acts taken in his or her capacity as an advocate for the state "when performing the traditional functions of an advocate" in initiating and pursuing a criminal prosecution. See Kalina v. Fletcher, 522 U.S. 118, 123-25, 131 (1997) (prosecutor immune for acts in connection with preparation and filing of information and motion for arrest warrant, but not immune for vouching personally for allegations contained in certification supporting issuance of arrest warrant); Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993) (immunity extends to prosecutor's "professional evaluation of evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury"); Burns v. Reed, 500 U.S. 478, 491-93 (1991) (prosecutor immune for acts of appearing before judge and presenting evidence in support of motion for search warrant, but not immune for

---

[4]    See North Carolina v. Alford, 400 U.S. 25 (1970).

1   giving legal advice to police).  Such immunity applies even in cases

2   involving allegations of malice, bad faith, or conspiracy.  See

3   Ashelman v. Pope, 793 F.2d 1072, 1077-78 (9th Cir. 1986) (en banc).

4   Such immunity applies to Plaintiff's RICO claim as well as to his

5   civil rights claims.  See Van Beek v. AG-Credit Bonus Partners, 316

6   Fed. App'x 554, 555-56 (9th Cir. 2008).

7

8       Prosecutorial immunity does not bar claims for injunctive and

9   related declaratory relief.  See Roe v. City and County of San

10  Francisco, 109 F.3d 578, 586 (9th Cir. 1997).  Plaintiff purports to

11  sue Defendants Wong and Wells in their official capacities only for

12  declaratory and injunctive relief pursuant to section 1983 and 28

13  U.S.C. § 2201 (Complaint, p. 7).  However, the Complaint does not

14  appear to seek injunctive relief on Plaintiff's civil rights claims,

15  but only on his RICO claim (Complaint, pp. 35-36).  Plaintiff also

16  appears to seek compensatory damages against all Defendants (see id.,

17  p. 38).  To the extent Plaintiff seeks damages against the Defendant

18  prosecutors for acts taken in connection with the prosecution of the

19  criminal proceedings against Plaintiff, those Defendants are immune

20  from suit.

21

22  **IV.  Plaintiff's RICO Claim Is Insufficient.**

23

24      The elements of a RICO claim are "(1) conduct (2) of an

25  enterprise (3) through a pattern (4) of racketeering activity (known

26  as 'predicate acts') (5) causing injury to plaintiff's 'business or

27  property.'"  Living Designs, Inc. v. E.I. Dupont de Nemours and Co.,

28  431 F.3d 353, 361 (9th Cir. 2005), cert. denied, 547 U.S. 1192 (2006).

For purposes of RICO, "racketeering activity" means: (1) "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical . . . which is chargeable under State law and punishable by imprisonment for more than one year"; and (2) any act indictable under a number of specified federal criminal statutes. See 18 U.S.C. § 1961(1).  A "pattern of racketeering activity" requires at least two predicate acts of racketeering activity.  18 U.S.C. § 1961(5).  Plaintiff does not expressly identify any particular RICO predicate acts, but appears to base his RICO claim on his allegations concerning Defendants' enforcement of California Insurance Code section 1872.83, and on all of the other allegations of the Complaint, which he incorporates in toto into his RICO claim (see Complaint, pp. 7-8, 10).

        To the extent Plaintiff bases his RICO claim on allegations that the assessment provisions of California's Insurance Fraud Protection Act improperly permit private funding of public insurance fraud prosecutions in general, the McCarran-Ferguson Act, 15 U.S.C. section 1012, precludes such a claim.  The McCarran-Ferguson Act provides, with limited exceptions not relevant here, that "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance . . . ."  15 U.S.C. § 1012(b).  The Act "precludes application of a federal statute in face of state law enacted for the purpose of regulating the business of insurance, if the federal measure does not specifically relate to

1   the business of insurance, and would invalidate, impair, or supersede

2   the State's law." <u>Humana Inc. v. Forsyth</u>, 525 U.S. 299, 307 (1999)

3   (citations, quotations and brackets omitted).  "RICO is not a law that

4   'specifically relates to the business of insurance.'"  <u>See id.</u>  "A

5   claim is reverse-preempted by McCarran-Ferguson when a federal law of

6   general applicability conflicts with a state law relating to the

7   business of insurance and when applying the federal law would

8   'frustrate any declared state policy or interfere with a State's

9   administrative scheme.'"  <u>Ojo v. Farmer's Group, Inc.</u>, 565 F.3d 1175,

10  1180 (9th Cir. 2009) (quoting <u>Humana Inc. v. Forsyth</u>, 525 U.S. at

11  310).  Application of RICO to hold Defendants liable for enforcing the

12  assessment provisions of the California Insurance Fraud Prevention Act

13  would interfere with and impair enforcement of California's Insurance

14  Fraud Prevention Act.

15

16       To the extent Plaintiff contends Defendants assertedly

17  administered the Insurance Fraud Protection Act so as to fund an

18  allegedly meritless investigation and prosecution of Plaintiff, or

19  otherwise subjected Plaintiff to false arrest, fabrication of evidence

20  and malicious prosecution, Plaintiff's allegations fail to state a

21  claim under RICO.  Malicious prosecution does not qualify as a RICO

22  "predicate act."  <u>See Hornung v. Madarang</u>, 2006 WL 3190671, at *8

23  (N.D. Cal. Nov. 2, 2006); <u>Von Bulow v. Von Bulow</u>, 657 F. Supp. 1134,

24  1143-46 (S.N.D.Y. 1987).  False arrest and "evidence planting" also do

25  not qualify.  <u>See Slade v. Gates</u>, 2002 WL 31357043, at *5 (C.D. Cal.

26  Oct. 2, 2002).

27

28       To the extent Plaintiff simply incorporates his other allegations

16

1   into his RICO claim, such "shotgun" pleading is insufficient to plead

2   a RICO claim.   See Savage v. Council on American-Islamic Relations,

3   Inc., 2008 WL 2951281, at *14 (N.D. Cal. July 25, 2008) (RICO claim

4   insufficient where plaintiff set forth a "redundant narrative of

5   allegations and conclusions of law, but [made] no attempt to allege

6   what facts are material to his claims under the RICO statute, or what

7   facts are used to support what claims under particular subsections of

8   RICO"); Federal Reserve Bank of San Francisco v. HK Systems, 1997 WL

9   227955, at *3 (N.D. Cal. Apr. 24, 1997) (complaint insufficient for

10  failure to "identify exactly which acts are 'predicate acts' for RICO

11  liability").

12

13      To the extent Plaintiff bases his RICO claim on alleged civil

14  rights violations, Plaintiff's RICO claim is insufficient.  "Civil

15  rights violations and injury to reputation do not fall within the

16  statutory definition of 'racketeering activity,'" and hence are not

17  predicate acts for RICO purposes.   See Bowen v. Oistead, 125 F.3d 800,

18  806 (9th Cir. 1997), cert. denied, 524 U.S. 938 (1998).  To the extent

19  Plaintiff sues state officials in their official capacities based on

20  any alleged predicate act requiring malice or proof of specific intent

21  to defraud, Plaintiff's RICO claim is insufficient.   "[G]overnment

22  entities are incapable of forming [the] malicious intent necessary to

23  support a RICO action."  Pedrina v. Chun, 97 F.3d 1296, 1300 (9th Cir.

24  1996), cert. denied, 520 U.S. 1268 (1997) (citation omitted); see also

25  Lancaster Community Hosp. v. Antelope Valley Hosp. Dist., 940 F.2d

26

27

28

1   397, 404 (9th Cir. 1991), <u>cert. denied</u>, 502 U.S. 1094 (1992).[5]

2

3        To the extent Plaintiff sues for violation of section 1962(b) of

4   RICO, the Complaint fails to state a claim.  Section 1962(b) of RICO

5   makes it unlawful "for any person through a pattern of racketeering

6   activity or through collection of an unlawful debt to acquire or

7   maintain, directly or indirectly, any interest in or control of any

8   enterprise which is engaged in, or the activities of which affect,

9   interstate or foreign commerce."  To state a RICO claim for violation

10  of 18 U.S.C. section 1962(b), a plaintiff must allege: (1) the

11  defendant's activity leading to the defendant's control or acquisition

12  over a RICO enterprise; and (2) an injury resulting from the

13  defendant's control or acquisition of a RICO enterprise.  <u>Wagh v.</u>

14  <u>Metris Direct, Inc.</u>, 363 F.3d 821, 830 (9th Cir. 2003), <u>cert. denied</u>,

15  541 U.S. 1043 (2004), <u>overruled on other grounds</u>, <u>Odom v. Microsoft</u>

16  <u>Corp.</u>, 486 F.3d 541, 551 (9th Cir.), <u>cert. denied</u>, 128 S. Ct. 464

17  (2007) (en banc).[6]  The plaintiff must allege "a specific nexus

18  between the control of the enterprise and the racketeering activity."

19  <u>Id.</u> (citation and internal quotations omitted).  The plaintiff also

20  must allege that the defendant's acquisition or control of the

21  enterprise injured the plaintiff "separate and apart from any injury

22  ───────────────

23        [5]   As Plaintiff appears to recognize (<u>see</u> Motion for
    Reconsideration, p. 4), Plaintiff's claims against state
24  officials in their official capacities are construed as claims
    against the state.  <u>See</u> <u>Kentucky v. Graham</u>, 473 U.S. 159, 165-66
25  (1985).

26        [6]   Congress enacted section 1962(b) to deal primarily with
    "situations in which criminal methods were employed to take
27  control of legitimate businesses."  <u>Three Rivers Provider</u>
    <u>Network, Inc. v. Meritain Health, Inc.</u>, 2008 WL 2872664, at *7
28  (S.D. Cal. July 23, 2008).

resulting from the alleged pattern of racketeering." <u>Three Rivers</u>
<u>Provider Network, Inc. v. Meritain Health, Inc.</u>, 2008 WL 2872664, at
*13 (S.D. Cal. July 23, 2008).  Here, Plaintiff does not allege how
each RICO Defendant's alleged conduct assertedly led to that
Defendant's control or acquisition over a RICO enterprise, and does
not allege actionable injury resulting from any such control or
acquisition.

**V.   <u>Plaintiff's Malicious Prosecution Claim Is Insufficient.</u>**

    **A.   <u>The Public Employee Defendants Are Immune.</u>**

Under California Government Code section 821.6, "[a] public
employee is not liable for injury caused by his instituting or
prosecuting any judicial or administrative proceeding within the scope
of his employment, even if he acts maliciously and without probable
cause."  A "public employee" is an employee of a public entity such as
the state, a city or a county.  <u>See</u> Cal. Gov't Code §§ 811.2, 811.4.
Hence, the Defendant public employees are immune from suit for
malicious prosecution.  <u>See</u> <u>Blankenhorn v. City of Orange</u>, 485 F.3d
463, 488 (9th Cir. 2007) (holding, however, that section 821.6 does
not immunize public employees for tortious conduct occurring during an
arrest); <u>Poppell v. City of San Diego</u>, 149 F.3d 951, 970 (9th Cir.
1998) (zoning official immune from liability for infliction of
emotional distress for referring alleged zoning violations to city
attorney for prosecution); <u>Martinez v. City of Los Angeles</u>, 141 F.3d
1373, 1379 (9th Cir. 1998) (under section 821.6, a police officer may
not be held liable for malicious prosecution).

**B.   Plaintiff Has Failed to Plead Sufficiently a Favorable Termination.**

To allege malicious prosecution, a plaintiff must allege that the prior proceeding terminated in his or her favor and that the termination reflected the merits of the action and the plaintiff's innocence of the misconduct alleged.  See Siebel v. Mittlesteadt, 41 Cal. 4th 735, 741, 62 Cal. Rptr. 3d 155, 161 P.3d 735 (2007) (citation and internal quotations omitted).  "Favorable termination is an essential element of the tort of malicious prosecution, and it is strictly enforced."  StaffPro, Inc. v. Elite Show Services, Inc., 136 Cal. App. 4th 1392, 1400, 39 Cal. Rptr. 3d 682 (2006) (citation and internal quotations omitted).  "If the resolution of the underlying action leaves some doubt concerning plaintiff's innocence or liability, it is not a favorable termination sufficient to allow a cause of action for malicious prosecution."  Pattiz v. Minye, 61 Cal. App. 4th 822, 826, 71 Cal. Rptr. 2d 802 (1998); see also Awabdy v. City of Adelanto, 368 F.3d 1062, 1066, 1068 (9th Cir. 2004).

Plaintiff has failed to plead sufficiently a favorable termination with respect to his convictions.  Plaintiff's insurance fraud conviction remains extant, barring any claim for malicious prosecution based on that conviction.  See Yount v. City of Sacramento, 43 Cal. 4th 885, 902, 76 Cal. Rptr. 3d 787, 183 P.3d 471 (2008), cert. denied, 129 S. Ct. 905 (2009) (principles espoused in Heck also apply to Plaintiff's state law tort claims); Susag v. City of Lake Forest, 94 Cal. App. 4th 1401, 1412-13, 115 Cal. Rptr. 2d 269 (2002) (same); Korbel v. Chou, 27 Cal. App. 4th 1427, 1431-32, 33 Cal.

Rptr. 2d 190 (1994) ("[i]f the accused were actually convicted, the presumption of his [or her] guilt or of probable cause for the charge would be so strong as to render wholly improper any action against the instigator of the charge") (citation and internal quotations omitted).

Nor has Plaintiff pleaded sufficiently a favorable termination with respect to his worker's compensation fraud convictions. This Court's order granting conditional habeas relief does not constitute a favorable termination. See DiBlasio v. City of New York, 102 F.3d 654, (2d Cir. 1996). Although in subsequent state court proceedings the trial court dismissed the worker's compensation fraud counts pursuant to the prosecution's statement of inability to proceed on those counts, that dismissal does not, without more, demonstrate the requisite favorable termination.[7] "[A] dismissal in the interests of justice satisfies [the favorable termination] requirement if it reflects the opinion of the prosecuting party or the court that the action lacked merit or would result in a decision in favor of the defendant." Awabdy v. City of Adelanto, 368 F.3d at 1068 (citations omitted); Jaffe v. Stone, 18 Cal. 2d 146, 150-51, 114 P. 2d 335 (1941). Plaintiff alleges no facts plausibly suggesting that dismissal of the worker's compensation charges reflected the opinion of the prosecutor or the state court that the action lacked merit. See generally Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009) (the plaintiff must plead facts, rather than conclusions, and the facts plausibly

---

[7]     The court apparently dismissed the worker's compensation fraud counts pursuant to California Penal Code section 1385, which permits the court, on its own motion or on application of the prosecutor, to dismiss an action "in furtherance of justice."

must suggest an entitlement to relief).  Moreover, when this Court granted habeas relief on the ground of instructional error, the Court also ruled the evidence sufficient to support the worker's compensation fraud convictions, a conclusion wholly inconsistent with any allegation that Plaintiff was innocent of worker's compensation fraud.  Therefore, Plaintiff has failed to plead a cognizable state law malicious prosecution claim.

To the extent Plaintiff asserts a constitutional malicious prosecution claim, the Complaint is also insufficient.  To assert a constitutional malicious prosecution claim, a plaintiff must allege, among other things, that the underlying proceeding terminated "in such a manner as to indicate [the plaintiff's] innocence."  <u>Awabdy v. City of Adelanto</u>, 368 F.3d at 1068 (citation and internal quotations omitted).  As discussed herein, the Complaint fails to plead facts showing any termination indicating Plaintiff's innocence.

**VI.   Plaintiff's Section 1985(3) Claim Is Insufficient.**

In order to state a claim under 42 U.S.C. section 1985(3), Plaintiff must allege a conspiracy to deprive Plaintiff of his civil rights, motivated by class-based, invidious animus.  <u>See</u> <u>Bray v. Alexandria Women's Health Clinic</u>, 506 U.S. 263, 267-68 (1993); <u>Griffin v. Breckenridge</u>, 403 U.S. 88, 101-02 (1971); <u>Butler v. Elle</u>, 281 F.3d 1014, 1028 (9th Cir. 2002).  The Complaint contains no such allegations.

///

///

**CONCLUSION AND ORDER**

The Complaint is dismissed with leave to amend.  If Plaintiff still wishes to pursue this action, he is granted twenty (20) days from the date of this Memorandum and Order within which to file a First Amended Complaint.  The First Amended Complaint shall be complete in itself.  It shall not refer in any manner to any prior complaint.  Failure to file timely a First Amended Complaint may result in the dismissal of this action.


IT IS SO ORDERED.


DATED: _October 8, 2009_.


_____
            MANUEL L. REAL
    UNITED STATES DISTRICT JUDGE


PRESENTED this 6th day of

October, 2009, by:


_____/S/_____
        CHARLES F. EICK
UNITED STATES MAGISTRATE JUDGE