CLERK, U.S. DISTRICT COURT

NOV 16 2009

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

RUBEN ODELL BOULWARE,       )   NO. CV 09-4325-R(E)
                            )
                Plaintiff,  )
                            )
    v.                      )   MEMORANDUM AND ORDER DISMISSING
                            )
DEPARTMENT OF INSURANCE,    )   FIRST AMENDED COMPLAINT
et. al.,                    )
                            )   WITH LEAVE TO AMEND
                Defendants. )
_____)

### PROCEEDINGS

Plaintiff, a state prisoner proceeding pro se, filed a "Civil Rights Complaint" on August 7, 2009.  On October 8, 2009, the Court issued a "Memorandum and Order Dismissing Complaint With Leave to Amend."  On October 30, 3009, Plaintiff filed a First Amended Complaint.

///
///
///
///

1 | **BACKGROUND**

2

3          Plaintiff's claims arise out of his conviction in 2003 on two

4   counts of workers' compensation fraud in violation of California

5   Insurance Code section 1871.4(a)(1) and one count of insurance fraud

6   in violation of California Penal Code section 550(a)(1).  See People

7   v. Boulware, 2004 WL 2384372 (Cal. Ct. App., Oct. 26, 2004).  The

8   workers' compensation fraud convictions were based on evidence that

9   Plaintiff knowingly failed to disclose to examining physicians a

10  previous injury that was material to the evaluation of Plaintiff's

11  workers' compensation claim.  The insurance fraud conviction was based

12  on evidence that, in support of Plaintiff's claim concerning an injury

13  allegedly received at a Von's market, Plaintiff submitted a

14  physician's receipt reflecting payment in connection with a different

15  injury.

16

17          On January 5, 2007, this Court entered judgment granting

18  conditional habeas relief with respect to Plaintiff's workers'

19  compensation fraud convictions only.  See Boulware v. Ollison, CV 06-

20  3744-R(E).  This Court also determined that the evidence sufficed to

21  support the workers' compensation fraud convictions, and that

22  Plaintiff was not entitled to habeas relief on his insurance fraud

23  conviction.  The State subsequently announced that it was unable to

24  proceed with a retrial of the workers' compensation counts, and the

25  state court dismissed those counts.  See Boulware v. Marshall, 621

26  F. Supp. 2d 882, 886 (C.D. Cal. 2008).  The state court resentenced

27  Plaintiff on the insurance fraud count.  Id.  Plaintiff filed a habeas

28  petition in this Court challenging the resentencing.  See Boulware v.

2

1 | <u>Marshall</u>, CV 08-4665-R(E).  On December 9, 2008, this Court denied the
2 | petition.  <u>See</u> <u>Boulware v. Marshall</u>, 621 F. Supp. 2d 882 (C.D. Cal.
3 | 2008).

4 |
5 |                   **SUMMARY OF ALLEGATIONS OF ORIGINAL COMPLAINT**
6 |
7 |      The original Complaint purported to allege civil rights
8 | violations pursuant to 42 U.S.C. sections 1983 and 1985(2), violations
9 | of the Racketeer Influenced and Corrupt Organizations Act ("RICO"),
10 | 18 U.S.C. §§ 1961-68, and a state law malicious prosecution claim.
11 | Plaintiff named as Defendants: (1) California Department of Insurance
12 | ("DOI") Commissioner Steve Poizner, in his individual and official
13 | capacity; (2) former DOI Commissioners Harry Low and John Garamendi,
14 | in their individual capacities only; (3) DOI "fraud division agents"
15 | Shawn Ferris, Ruby Favis, Willie Lawrence, Kimberly Staal, Daniel
16 | McKerren and Barbra Bridgewater, in their individual and official
17 | capacities; (4) twenty insurance companies; (5) Los Angeles County
18 | deputy district attorneys Lance Wong and David Wells; (6) private
19 | attorney Gene Shioda; (7) private party Paul Cain III; and
20 | (8) fictitious "Doe" Defendant DOI agents, insurance companies and
21 | deputy district attorneys.

22 |
23 |      The original Complaint alleged that, in 1999, Plaintiff
24 | assertedly filed a workers' compensation claim after allegedly
25 | sustaining an on-the-job injury to his shoulder while working for
26 | Defendant Cain (Complaint, pp. 18, 24-25).  Defendants Cain and Shioda
27 | allegedly delayed the Workers' Compensation Appeals Board ("WCAB")
28 | trial for years, and allegedly attempted to stop the trial by

contending that Plaintiff had committed fraud (id., p. 18).  Defendant
Shioda's assertedly fraudulent complaints to the Fraud Division
allegedly resulted in an official investigation of Plaintiff (id.,
p. 25).  Plaintiff alleged that Cain was an "illegally uninsured
employer," and that DOI officials had no power to investigate claims
of fraud made by an uninsured employer (Complaint, p. 19).  Defendants
Ferris and Lawrence allegedly caused Plaintiff's parole to be revoked
on October 12, 2000 based on assertedly false allegations of workers'
compensation insurance fraud, as a result of which Plaintiff allegedly
was incarcerated for a year (id., p. 26).

On September 13, 2002, a WCAB judge allegedly entered judgment
for Plaintiff in the amount of $20,000 on Plaintiff's workers'
compensation claim (id., p. 18).  On December 17, 2002, Defendant
Staal allegedly filed a report identifying Cain as a victim of
workers' compensation fraud (id., p. 21).  On January 7, 2003,
Defendants Staal and Wells allegedly obtained a warrant for
Plaintiff's arrest, without probable cause, for workers' compensation
fraud and insurance fraud (id., pp. 22, 28).  Plaintiff allegedly was
arrested on January 9, 2003 (id., p. 28).  The original Complaint also
contained allegations relating to Plaintiff's claim for injuries
purportedly suffered at the Von's market.

The original Complaint contained four claims for relief,
alleging: (1) violation of RICO, 18 U.S.C. section 1962(b);
(2) malicious prosecution; (3) violation of Plaintiff's civil rights
protected by the First, Fourth and Eighth Amendments and Due Process,
pursuant to 42 U.S.C. section 1983; and (4) conspiracy to violate

4

1  civil rights pursuant to 42 U.S.C. section 1985(3).

2

3      In his RICO claim, Plaintiff alleged that Defendants Poizner,

4  Low, Garamendi, Favis, Ferris, Lawrence, Staal, Bridgewater, McKerren,

5  Wong and Wells, and the Defendant insurance companies, allegedly

6  violated RICO through a pattern of racketeering activity "by allowing

7  private parties (insurance companies) to directly pay the salaries of

8  public prosecutors for the investigation, prosecution, conviction and

9  collection of restitution for insurance fraud related crimes"

10  (Complaint, pp. 15-16).   Plaintiff contended that, pursuant to the

11  California Insurance Frauds Prevention Act, California Insurance Code

12  section 1871 et seq., the Defendant insurance companies bear the cost

13  of the administration and operation of the DOI's Fraud Division

14  pursuant to an alleged "pay-for-prosecutions" scheme (Complaint,

15  pp. 16-18).   According to Plaintiff, pursuant to California Insurance

16  Code sections 1872.83(b)(4) and 1872.83(d),[1] Defendants Poizner, Low

17  _____

18      [1]    Section 1872.83(b) establishes a Fraud Assessment
    Commission for the purpose of establishing and administering an
19  industry assessment to fund "increased investigation and
    prosecution of workers' compensation fraud, and of willful
20  failure to secure payment of workers' compensation, in violation
    of Section 3700.5 of the Labor Code."   Section 1872.83(b)(4)
21  provides:

22
           (4) The amount collected, together with the fines
23         collected for violations of the unlawful acts specified
           in Sections 1871.4, 11760, and 11880, Section 3700.5 of
24         the Labor Code, and Section 549 of the Penal Code,
           shall be deposited in the Workers' Compensation Fraud
25         Account in the Insurance Fund, which is hereby created,
           and may be used, upon appropriation by the Legislature,
26         only for enhanced investigation and prosecution of
           workers' compensation fraud and of willful failure to
27         secure payment of workers' compensation as provided in
                                                    (continued...)
28

1   and Garamendi allegedly distributed these assertedly private funds to

2   the DOI Fraud Division and the Los Angeles County District Attorney's

3   Office Workers' Compensation Insurance Fraud Division, and to public

4   prosecutors prosecuting insurance fraud crimes (Complaint, pp. 17-18,

5   28).   Pursuant to this alleged "racketeering scheme," Defendants

6   assertedly falsely accused, arrested, prosecuted and convicted

7   Plaintiff for workers' compensation fraud and insurance fraud (id.,

8   ───────────────────

9       [1](...continued)
        this section.

10

11      Section 1872.83(d) provides:

12      After incidental expenses, at least 40 percent of the
        funds to be used for the purposes of this section shall

13      be provided to the Fraud Division of the Department of
        Insurance for enhanced investigative efforts, and at

14      least 40 percent of the funds shall be distributed to
        district attorneys, pursuant to a determination by the

15      commissioner with the advice and consent of the
        division and the Fraud Assessment Commission, as to the

16      most effective distribution of moneys for purposes of
        the investigation and prosecution of workers'

17      compensation fraud cases and cases relating to the
        willful failure to secure the payment of workers'

18      compensation.  Each district attorney seeking a portion
        of the funds shall submit to the commissioner an

19      application setting forth in detail the proposed use of
        any funds provided.  A district attorney receiving

20      funds pursuant to this subdivision shall submit an
        annual report to the commissioner with respect to the

21      success of his or her efforts.  Upon receipt, the
        commissioner shall provide copies to the Fraud Division

22      and the Fraud Assessment Commission of any application,
        annual report, or other documents with respect to the

23      allocation of money pursuant to this subdivision.  Both
        the application for moneys and the distribution of

24      moneys shall be public documents.  Information
        submitted to the commissioner pursuant to this section

25      concerning criminal investigations, whether active or
        inactive, shall be confidential.

26

27

28

1  pp. 10-12).

2

3      In his malicious prosecution claim, Plaintiff alleged that

4  Defendants Garamendi, Favis, Ferris, Lawrence, Staal, McKerran and

5  Bridgewater conducted an investigation of Plaintiff for workers'

6  compensation fraud against an allegedly "illegally uninsured

7  employer," Defendant Cain (Complaint, p. 11).  These Defendants

8  allegedly conducted the investigation without probable cause and with

9  malice, and allegedly instituted the criminal case against Plaintiff

10 falsely (id.).

11

12     In his civil rights claim, Plaintiff alleged that Defendants

13 Favis, Ferris, Staal, Lawrence, Bridgewater, McKerren, Cain, Shioda,

14 and Wells conspired to prosecute Plaintiff falsely for workers'

15 compensation fraud in retaliation for Plaintiff's filing of a workers'

16 compensation claim, allegedly in violation of the First Amendment, the

17 Fourth Amendment, the Eighth Amendment, and Due Process (id., pp. 12-

18 15, 31-32).  In his "civil conspiracy" claim, brought pursuant to 42

19 U.S.C. section 1985(3), Plaintiff alleged that Defendants conspired to

20 "annul" Plaintiff's $20,000 WCAB judgment, and to prosecute Plaintiff

21 falsely for workers' compensation fraud and insurance fraud,

22 assertedly causing Plaintiff to be incarcerated for "well over 6

23 years" (id., pp. 33-34).

24

25     The original Complaint sought injunctive and declaratory relief,

26 compensatory damages (purportedly to be trebled under RICO), and

27 punitive damages.

28 ///

## SUMMARY OF ALLEGATIONS OF FIRST AMENDED COMPLAINT

The First Amended Complaint names as Defendants all of the Defendants named in the original Complaint except Los Angeles County deputy district attorneys Lance Wong and David Wells.[2]  Plaintiff sues all of the individual Defendants in their individual capacities only.

Plaintiff alleges that, on December 31, 1999, Plaintiff sustained an on-the-job injury to his shoulder while an employee of Defendant Cain (First Amended Complaint, pp. 6-7).  Cain allegedly did not have any form of workers' compensation insurance, and hence assertedly was in violation of state law requiring such insurance (id.).  Cain allegedly refused to pay for Plaintiff's medical treatment (id. at 7).

On January 2, 2000, Plaintiff allegedly retained an attorney who filed a workers' compensation claim on Plaintiff's behalf (id., p. 7).  Plaintiff allegedly received treatment for the injury on January 6, 2000 (id.).  On February 7, 2000, a doctor allegedly evaluated an MRI which assertedly showed "moderate to servere impingment [sic] syndrome" (id.).[3]

///

///

---

[2]   Therefore, the Court deems Plaintiff to have abandoned his claims against former Defendants Wong and Wells.  See Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1546 (9th Cir. 1989) ("[t]he fact that a party was named in the original complaint is irrelevant; an amended pleading supersedes the original").

[3]   Plaintiff allegedly underwent surgery on February 18, 2009 (id.).

Plaintiff alleges that, commencing on June 9, 2000, Defendants Cain and Shioda (Cain's attorney) submitted the first of "many dilatory letters" to the WCAB, assertedly to "stymie" Plaintiff's claim (id., p. 8).  On June 15, 2000 and July 14, 2000, Defendants Cain and Shioda allegedly committed felonies by assertedly submitting a fraudulent complaint to the DOI Fraud Division contending that Plaintiff had been an independent contractor at the time of the alleged injury (id.).  On July 28, 2000, the Fraud Division allegedly initiated a formal investigation into the allegations of workers' compensation insurance fraud (id.).  Plaintiff alleges that Defendants Favis, Ferris, Lawrence, Staal, McKerren and Bridgewater knew before, during, and after the investigation of Plaintiff "that the case did not involve any insurance company (victim)" (id., p. 4).

On August 15, 2000, Defendants Cain and Shioda allegedly submitted a "suspected fraudulent claim form" to Defendants Favis, Ferris and Lawrence (id., p. 9).  On October 12, 2000, Defendants Ferris and Lawrence allegedly falsely accused Plaintiff of workers' compensation insurance fraud (id., p. 10).  On or about November 21, 2000, Defendant Ferris allegedly testified at Plaintiff's parole revocation hearing, which testimony assertedly contributed to the revocation of Plaintiff's parole and to Plaintiff's alleged return to prison until October 15, 2001 (id.).

Plaintiff alleges that, four days after a mandatory settlement conference in the WCAB proceeding, Defendant Ferris assigned Defendant Staal to "re-investigate" Plaintiff's workers' compensation claim (id., p. 11).  Defendants Ferris and Staal allegedly went to Cain's

home to "discuss their plan to stop [Plaintiff's workers' compensation claim] from proceeding to trial" (id.).

At the trial of the workers' compensation claim on September 13, 2000, Defendants Cain, Shioda and Staal allegedly attempted to stop the trial, assertedly by telling the judge that Plaintiff had committed workers' compensation fraud by failing to disclose a prior injury (id., p. 13).  The judge allegedly reminded these Defendants that failing to have workers' compensation insurance coverage violated state law (id.).  The parties in the WCAB proceeding allegedly entered into a "compromise and settlement of $20,000, plus medical expenses" (id.).

On September 9, 2002, Defendant Staal allegedly interviewed Dr. Stuart Gold, who concluded that Plaintiff's prior injury reportedly was not a "ratable injury" (id., p. 14).  Defendants Ferris, Favis, Lawrence, Shioda, Cain, Bridgewater and McKerren allegedly submitted "investigations and interviews" to the Los Angeles County District Attorney's Office (id.).  On January 7, 2003, Defendant Staal allegedly filed a fraudulent declaration in support of an application for an arrest warrant (id.).

Plaintiff allegedly was arrested on January 9, 2003, assertedly without probable cause (id.).  A jury allegedly convicted Plaintiff of two counts of workers' compensation fraud on September 9, 2003 (id.).

Following this Court's decision in <u>Boulware v. Ollison</u>, the district attorney moved to dismiss the two counts of workers'

10

compensation fraud (First Amended Complaint, p. 15). Plaintiff alleges that, "[b]ased upon some of the trial exhibits being disposed and the prosecution[']s burden of proving that the prior injury was in fact labor-disabling, the plaintiff would have been acquitted of the crime of workers['] compensation fraud" (id.).[4]

Plaintiff also alleges that Defendants Poizner, Low, Garamendi, Favis, Ferris, Lawrence, Staal, Bridgewater and McKerren "acquired and/or maintained control over an enterprise through a pattern of racketeering activities by allowing insurance companies to pay the salaries of district attorneys who are willing to prosecute and convict insurance fraud related crimes" (id., pp. 16-17). Defendants Poizner, Low and Garamendi allegedly established, maintained control over, and oversaw the funding of the Fraud Division and the salaries of deputy district attorneys who purportedly prosecuted insurance fraud (id., p. 17). The "Defendant insurers" allegedly paid money to Defendants Poizner, Low and Garamendi, who in turn allegedly allocated 40% of the funds to the Fraud Division and another 40% to the district attorneys who prosecute insurance fraud (id.). Plaintiff alleges that, in 2001, Defendant Low allegedly paid the Los Angeles County Workers' Compensation Insurance Fraud Program ("Program") $412,045, but reduced the funding in 2002 because the Program reduced its

---

[4]     Under California's workers' compensation scheme, "[w]hen the employee has a preexisting *nondisabling* condition or pathology which is aggravated by an industrial injury, the employer is liable for the entire disability even though the employee's physical condition contributed to or increased the disability caused by the industrial injury." See People v. Gillard, 57 Cal. App. 4th 136, 154, 66 Cal. Rptr. 2d 790 (1997) (citation omitted; original emphasis).

insurance fraud convictions (id.).  Plaintiff alleges that, in a
supposed effort to secure more funding, the Program increased its
prosecutions and convictions for insurance fraud (id., p. 18).
Defendants Poizner, Low and Garamendi also allegedly offered district
attorneys additional incentives to prosecute insurance fraud cases by
assertedly allowing district attorneys "to obtain the monies for fines
and restitution" and allowing "Defendant insurers" to "recoup their
monies" (id.).

     The First Amended Complaint asserts claims for: (1) retaliation
allegedly in violation of the First Amendment; (2) false arrest
allegedly in violation of the Fourth Amendment; (3) violation of RICO;
and (4) malicious prosecution.  Each claim purports to incorporate all
of the allegations in the pleading.

     In his retaliation claim, Plaintiff alleges that: (1) Defendants
Ferris, Favis, Lawrence, Staal, Bridgewater and McKerren retaliated
against Plaintiff for filing a workers' compensation claim by
investigating Plaintiff for insurance fraud knowing that Cain was
uninsured; (2) Defendants Cain, Shioda, Ferris and Lawrence retaliated
against Plaintiff by making allegations of workers' compensation
insurance fraud to the parole board; and (3) Defendant Staal
retaliated against Plaintiff by obtaining a warrant for Plaintiff's
arrest for workers' compensation fraud "knowing that there was in fact
no insurance involved" (id., p. 19).

     In his Fourth Amendment claim, Plaintiff alleges that Defendants
Favis, Ferris, Staal, Lawrence, Bridgewater and McKerren arrested

Plaintiff without probable cause "which was supported by the fact that
the alleged victim (Defendant Cain) lacked insurance coverage" (id.,
p. 20).   Plaintiff alleges that Defendants "lacked statutory authority
to investigate, arrest and convict the Plaintiff of workers
compensation insurance fraud" because "the workers compensation claim
filed by the plaintiff did not involve insurance" (id., p. 21).
Defendant Staal allegedly "knew that no material misrepresentation was
ever made which would have affected the WCAB judgment" (id., p. 20).

In his RICO claim, Plaintiff alleges that the asserted misconduct
of Defendants Poizner, Low, Garamendi, Favis, Ferris, Staal, Lawrence,
Bridgewater and McKerren and the Defendant insurance companies caused
Plaintiff to be charged and incarcerated unjustly, assertedly
rendering Plaintiff unable to pursue his business as a truck
owner/operator (id., p. 22).   Defendants' alleged "enterprise that
provides monetary funds for the successful conviction of insurance
fraud cases" purportedly contributed to Plaintiff's assertedly unjust
conviction for workers' compensation insurance fraud (id.).

In his malicious prosecution claim, Plaintiff alleges that
Defendants Favis, Ferris, Staal, Lawrence, Bridgewater and McKerren
investigated and prosecuted Plaintiff for workers' compensation
insurance fraud, assertedly without probable cause and with malice,
and allegedly "in order to void the plaintiff's WCAB judgment of
$20,000" (id., pp. 23-24).   Plaintiff alleges that Plaintiff's prior
injury was not "labor-disabling" because Plaintiff allegedly was
working when he assertedly was injured on December 31, 1999 (id.,
p. 24).   Plaintiff alleges that the WCAB judge ruled that the prior

13

injury was not material (id., p. 25).  The WCAB judge allegedly
reopened the workers' compensation claim proceedings, which assertedly
have now ended in Plaintiff's favor, thus allegedly reflecting
Plaintiff's asserted innocence (id.).

Plaintiff seeks a declaration that: (1) Defendants Favis, Ferris,
Staal, Lawrence, Bridgewater and McKerren allegedly "lacked statutory
authority and probable cause to investigate the allegations of
workers' compensation insurance fraud on behalf of Defendant Cain";
(2) Defendant Cain allegedly "was in violation of state law by being
illegally uninsured"; (3) Defendants Favis, Ferris, Staal, Lawrence,
Bridgewater and McKerren allegedly "knew that Defendant Cain was in
fact uninsured and in violation of California Labor Code section 3700,
prior to initiating a criminal complaint against the Plaintiff";
(4) Defendants Poizner, Low and Garamendi allegedly received and
distributed funds from the "Defendant insurers" to the Fraud Division
and district attorneys for investigating, prosecuting and convicting
Plaintiff of workers' compensation insurance fraud; and (5) Defendants
Poizner, Low, Garamendi and "Defendant insurers" allegedly injured
Plaintiff's business and property by assertedly violating Plaintiff's
First and Fourth Amendment rights (First Amended Complaint, pp. 25-
26).

Plaintiff also seeks: (1) compensatory damages in the sum of
$25,000,000, purportedly to be trebled under RICO; (2) the $20,000
WCAB judgment; (3) economic damages in the sum of $249,600, based on
Plaintiff's alleged loss of business opportunities as the alleged
owner-operator of a trucking company; (4) punitive damages in the sum

of $1,000,000 each from Defendants Ferris, Favis and Staal; and
(5) punitive damages in the sum of $500,000 each from Defendants
Lawrence, McKerren, Bridgewater, Shioda and Cain (id., pp. 27-28).

**DISCUSSION**

**I.    To the Extent Plaintiff Alleges That Defendants Lacked Probable
Cause to Investigate, Arrest and Prosecute Plaintiff Because
Defendant Cain Allegedly Was Uninsured, Plaintiff's Claims Are
Insufficient.**

Plaintiff appears to base all of his claims, in whole or in part,
on the contention that various Defendants lacked authority to
investigate Plaintiff and lacked probable cause to arrest and
prosecute Plaintiff because Defendant Cain did not have workers'
compensation insurance.  This contention is untenable.

Petitioner was convicted of two counts of workers' compensation
insurance fraud in violation of California Insurance Code section
1871.4(a), which makes it unlawful to "[m]ake or cause to be made a
knowingly false or fraudulent material statement or material
representation for the purpose of obtaining or denying any
compensation, as defined in Section 3207 of the Labor Code."
California Labor Code section 3207, contained in California's Workers'

Compensation Act,[5] defines "compensation" as "compensation under this division and includes every benefit or payment conferred by this division upon an injured employee . . . ."

California's Workers' Compensation Act requires every private California employer to "secure the payment of compensation" by obtaining workers' compensation liability insurance or by securing from the Director of Industrial Relations a certificate of consent to self-insure.  Cal. Labor Code §§ 3700(a), (b).  "Absent compliance with one of these alternatives an employee is not subject to the exclusive remedy of workers' compensation but may bring a claim before the WCAB and a tort action against the uninsured employer." Valdez v. Himmelfarb, 144 Cal. App. 4th 1261, 1268, 51 Cal. Rptr. 3d 195 (2006) (footnote omitted); see Cal. Labor Code §§ 3706, 3715.  In the WCAB proceeding, "the appeals board shall hear and determine the application for compensation in like manner as in other claims and shall make the award to the claimant as he or she would be entitled to receive if the employer had secured the payment of compensation as required, and the employer shall pay the award in the manner and amount fixed thereby or shall furnish to the appeals board a bond, in any amount and with any sureties as the appeals board requires, to pay the employee in the manner and amount fixed thereby."  Cal. Labor Code § 3715(a).  If the employer fails to pay the compensation required by section 3715 within 10 days after notification of the award, the award

---

[5]      Section 3207 is contained in Division 4 of the Labor Code, which is part of California's Workers' Compensation Law. See Pearl v. Workers' Compensation Appeals Bd., 26 Cal. 4th 189, 195, 109 Cal. Rptr. 2d 308, 26 P.3d 1044 (2001).

1  is paid from the Uninsured Employers Benefits Trust Fund.   Cal. Labor

2  Code § 3716(a).[6]

3

4      Nothing in the statutory scheme authorizes an employee of an

5  uninsured employer to commit workers' compensation fraud, or requires

6  an uninsured employer, or the Uninsured Employers Benefits Trust Fund,

7  to submit to an employee's fraud.   The statutory scheme makes this

8  conclusion clear.   The "compensation" to which California Insurance

9  Code section 1871.4(a) refers includes compensation available under

10 the workers' compensation statutes governing uninsured employers,

11 including Labor Code sections 3706 and 3715.   It necessarily follows

12 that one who seeks to obtain workers' compensation benefits by fraud

13 from an uninsured employer or the Uninsured Employers Benefits Trust

14 Fund violates section 1871.4(a).

15

16     The policy animating the workers' compensation fraud statute also

17 bolsters this conclusion.   "The clear import [of section 1871.4] is to

18 reduce fraud against insurers in order to benefit policyholders."

19 State ex rel. Nee v. Unumprovident Corp., 140 Cal. App. 4th 442, 448,

20 44 Cal. Rptr. 3d 491 (2006); see Cal. Ins. Code § 1871(d) ("Workers'

21 compensation fraud harms employers by contributing to the increasingly

22 high cost of workers' compensation insurance and self-insurance and

23 harms employees by undermining the perceived legitimacy of all

24 workers' compensation claims."); Cal. Ins. Code § 1871(e) ("Prevention

25 _____

26     [6]    Once the Fund pays the award, the Fund becomes
   subrogated to the employee's claim and may recover the amount of
27 the award from the employer.   Smith v. Workers' Compensation
   Appeals Bd., 96 Cal. App. 4th 117, 121 n.2, 116 Cal. Rptr. 2d 728
28 (2002).

of workers' compensation insurance fraud may reduce the number of workers' compensation claims and claim payments thereby producing a commensurate reduction in workers' compensation costs.  Prevention of workers' compensation insurance fraud will assist in restoring confidence and faith in the workers' compensation system, and will facilitate expedient and full compensation for employees injured at the workplace.").  Thus, to allow the uninsured status of the employer to be a defense to workers' compensation insurance fraud manifestly would be contrary to the purpose, as well as the language, of the applicable statute.

Moreover, it is well-established that a crime victim's alleged wrongdoing is not a defense in a criminal case:

> If the party defrauded is also guilty of a violation of the law, he, too, should be prosecuted, rather than his offense should serve as a shield to the other's crime.  The offense is committed against the public, and not against the individual.  The guilty party is prosecuted in the interest of the people of the state, and not in the interest of the party defrauded of his property.  There is no principle of law that will bar the state from prosecuting a criminal because some other person is a particeps criminis.

People v. Martin, 102 Cal. 558, 563-64, 36 P. 952 (1894); see People v. Schmies, 44 Cal. App. 4th 38, 46, 51 Cal. Rptr. 2d 185 (1996) ("The conduct of the victim or other third persons, whether negligent or even criminally proscribed, is not, in itself, a defense to crime.")

(citations omitted); <u>People v. Hall</u>, 133 Cal. App. 40, 45, 23 P.2d 783 (1933) ("There is no principle of law that will bar the state from prosecuting a criminal because some other person is a particeps criminis."); <u>see also</u> <u>State v. Mellenberger</u>, 163 Or. 233, 257, 95 P.2d 709 (1939) ("the doctrine of particeps criminis has no place in the administration of the criminal law"; "[t]he fact that others, equally guilty, however numerous, are not being prosecuted has no bearing on the guilt of a defendant who is being prosecuted"); <u>Frazier v. Commonwealth</u>, 291 Ky. 467, 165 S.W.2d 33 (1942) (victim's alleged willingness to traffic in contraband no defense to theft by false pretenses; purpose of criminal law is to "protect the public by punishing the criminal and preventing crime"); <u>Crawley v. State</u>, 513 S.W.2d 62 (Tex. Crim. App. 1974) ("it is no defense to a criminal charge that the victim was guilty of wrongdoing in the particular transaction out of which the offense arose, since crime is punished because of the offense against society, not because of an offense against the victim") (citations omitted); 3 Wayne R. LaFave, <u>Substantive Criminal Law</u>, § 19.7 (i)(2) (2d Ed. 2003) ("The almost universal rule quite properly holds that the victim's illegal conduct is no defense to the crime of false pretenses.  This rule is but a part of the broader principle that the victim's badness is no defense to crimes committed against him.") (footnotes omitted).

California's Workers' Compensation Act provides a "scheme for punishing uninsured employers and compensating their injured employees." <u>Cal. State Auto. Ass'n Inter-Insurance Bureau v. Workers' Compensation App. Bd.</u>, 137 Cal. App. 4th 1040, 1045, 40 Cal. Rptr. 3d 743 (2006) (citation omitted).  The statute does not authorize the

1   employees of an uninsured employer to commit workers' compensation

2   insurance fraud, as "punishment" for the uninsured employer or

3   otherwise.   Therefore, to the extent Plaintiff bases his claims on

4   allegations that various Defendants lacked authority to investigate or

5   probable cause to arrest and prosecute Plaintiff for workers'

6   compensation insurance fraud because Cain assertedly was uninsured,

7   such claims fail to allege a cognizable claim for relief.

8

9   **II.   Plaintiff's RICO Claim Is Insufficient.**

10

11      The elements of a RICO claim are "(1) conduct (2) of an

12   enterprise (3) through a pattern (4) of racketeering activity (known

13   as 'predicate acts') (5) causing injury to plaintiff's 'business or

14   property.'"   Living Designs, Inc. v. E.I. Dupont de Nemours and Co.,

15   431 F.3d 353, 361 (9th Cir. 2005), cert. denied, 547 U.S. 1192 (2006).

16   For purposes of RICO, "racketeering activity" means: (1) "any act or

17   threat involving murder, kidnapping, gambling, arson, robbery,

18   bribery, extortion, dealing in obscene matter, or dealing in a

19   controlled substance or listed chemical . . . which is chargeable

20   under State law and punishable by imprisonment for more than one

21   year"; and (2) any act indictable under a number of specified federal

22   criminal statutes.   See 18 U.S.C. § 1961(1).   A "pattern of

23   racketeering activity" requires at least two predicate acts of

24   racketeering activity.   18 U.S.C. § 1961(5).   Plaintiff does not

25   expressly identify any particular RICO predicate acts, but appears to

26   base his RICO claim on his allegations concerning Defendants'

27   enforcement of California Insurance Code section 1872.83, and on the

28   other allegations of the First Amended Complaint, which he

1  incorporates _in toto_ into his RICO claim (_see_ First Amended Complaint,
2  pp. 21-22).

4       Plaintiff bases his RICO claim on allegations that:
5  (1) Defendants improperly obtained private funds to prosecute
6  Plaintiff pursuant to California's Insurance Frauds Prevention Act;
7  (2) Defendants allegedly subjected Plaintiff to false arrest and
8  malicious prosecution; and (3) Defendants allegedly violated
9  Plaintiff's constitutional rights.  Plaintiff also incorporates into
10  his RICO claim all of the allegations contained in the First Amended
11  Complaint (_see_ First Amended Complaint, p. 21).

13       As the Court previously advised Plaintiff in the Court's
14  October 8, 2009 Memorandum and Order, to the extent Plaintiff bases
15  his RICO claim on allegations that the assessment provisions of
16  California's Insurance Frauds Prevention Act improperly permit private
17  funding of public insurance fraud prosecutions, the McCarran-Ferguson
18  Act, 15 U.S.C. section 1012, precludes such a claim.  The McCarran-
19  Ferguson Act provides, with limited exceptions not relevant here, that
20  "[n]o Act of Congress shall be construed to invalidate, impair, or
21  supersede any law enacted by any State for the purpose of regulating
22  the business of insurance, or which imposes a fee or tax upon such
23  business, unless such Act specifically relates to the business of
24  insurance . . . ."  15 U.S.C. § 1012(b).  The Act "precludes
25  application of a federal statute in face of state law enacted for the
26  purpose of regulating the business of insurance, if the federal
27  measure does not specifically relate to the business of insurance, and
28  would invalidate, impair, or supersede the State's law."  _Humana Inc._

v. Forsyth, 525 U.S. 299, 307 (1999) (citations, quotations and brackets omitted).   "RICO is not a law that 'specifically relates to the business of insurance.'"   See id.   A claim is reverse-preempted by McCarran-Ferguson when a federal law of general applicability conflicts with a state law relating to the business of insurance and when applying the federal law would "frustrate any declared state policy or interfere with a State's administrative scheme."   Humana Inc. v. Forsyth, 525 U.S. at 310.

California enacted its Insurance Frauds Prevention Act to enable the Commissioner of Insurance and the DOI "more effectively [to] investigate and discover insurance frauds, halt fraudulent activities, and assist and receive assistance from federal, state, local and administrative law agencies in the prosecution of persons who are parties in insurance frauds." Cal. Ins. Code § 1981(a).  In enacting the Insurance Frauds Prevention Act, the California Legislature "clearly expressed its intent to promote the investigation and prosecution of insurance fraud, including workers' compensation fraud. . . ." People ex rel. Monterey Mushrooms, Inc. v. Thompson, 136 Cal. App. 4th 24, 30, 38 Cal. Rptr. 3d 677 (2006), cert. denied, 549 U.S. 1148 (2007) and 549 U.S. 1283 (2007).  As indicated above, California Insurance Code section 1872.83(b), part of the Insurance Frauds Prevention Act, establishes a Fraud Assessment Commission for the purpose of establishing and administering an industry assessment to fund "increased investigation and prosecution of workers' compensation fraud, and of willful failure to secure payment of workers' compensation, in violation of Section 3700.5 of the Labor Code."  The California Insurance Commission has promulgated regulations governing

22

1  "the distribution of funds to district attorneys for enhanced
2  investigation and prosecution of workers' compensation insurance fraud
3  cases . . . ."  Cal. Code Regs., tit. 10, § 2698.50 et seq.
4  Application of RICO to hold Defendants liable for enforcing the
5  assessment provisions of the California Insurance Frauds Prevention
6  Act would interfere with California's expressed policies governing the
7  prevention of insurance fraud and impair enforcement of California's
8  Insurance Frauds Prevention Act.
9
10       As the Court previously advised Plaintiff in the October 8, 2009
11 Memorandum and Order, to the extent Plaintiff contends Defendants
12 assertedly administered the Insurance Frauds Prevention Act so as to
13 fund an allegedly meritless investigation and prosecution of
14 Plaintiff, or otherwise subjected Plaintiff to false arrest,
15 fabrication of evidence and malicious prosecution, Plaintiff's
16 allegations fail to state a claim under RICO.  Malicious prosecution
17 does not qualify as a RICO "predicate act."  See Hornung v. Madarang,
18 2006 WL 3190671, at *8 (N.D. Cal. Nov. 2, 2006); Von Bulow v. Von
19 Bulow, 657 F. Supp. 1134, 1143-46 (S.N.D.Y. 1987).  False arrest and
20 "evidence planting" also do not qualify.  See Slade v. Gates, 2002 WL
21 31357043, at *5 (C.D. Cal. Oct. 2, 2002).
22
23       As the Court previously advised Plaintiff in the October 8, 2009
24 Memorandum and Order, to the extent Plaintiff bases his RICO claim on
25 alleged civil rights violations, Plaintiff's RICO claim is
26 insufficient.  "Civil rights violations and injury to reputation do
27 not fall within the statutory definition of 'racketeering activity,'"
28 and hence are not predicate acts for RICO purposes.  See Bowen v.

1 | <u>Oistead</u>, 125 F.3d 800, 806 (9th Cir. 1997), <u>cert. denied</u>, 524 U.S. 938

2 | (1998).

3 |

4 |     As the Court previously advised Plaintiff in the October 8, 2009

5 | Memorandum and Order, to the extent Plaintiff simply incorporates his

6 | other allegations into his RICO claim, such "shotgun" pleading is

7 | insufficient to plead a RICO claim. <u>See</u> <u>Savage v. Council on</u>

8 | <u>American-Islamic Relations, Inc.</u>, 2008 WL 2951281, at *14 (N.D. Cal.

9 | July 25, 2008) (RICO claim insufficient where plaintiff set forth a

10 | "redundant narrative of allegations and conclusions of law, but [made]

11 | no attempt to allege what facts are material to his claims under the

12 | RICO statute, or what facts are used to support what claims under

13 | particular subsections of RICO"); <u>Federal Reserve Bank of San</u>

14 | <u>Francisco v. HK Systems</u>, 1997 WL 227955, at *3 (N.D. Cal. Apr. 24,

15 | 1997) (complaint insufficient for failure to "identify exactly which

16 | acts are 'predicate acts' for RICO liability").

17 |

18 |     Despite the Court's discussion of the defects of Plaintiff's RICO

19 | claim in the October 8, 2009 Memorandum and Order, and despite the

20 | Court's grant of an opportunity to amend, the RICO claim in the First

21 | Amended Complaint essentially replicates the defects in Plaintiff's

22 | RICO claim in the original Complaint.  In these circumstances,

23 | dismissal of Plaintiff's RICO claim without leave to amend is

24 | appropriate.  <u>See</u> <u>Zucco Partners, LLC v. Digimarc Corp.</u>, 552 F.3d 981,

25 | 1007 (9th Cir. 2009) (affirming dismissal without leave to amend where

26 | court advised plaintiff of pleading deficiencies but plaintiff failed

27 | to correct those deficiencies in amended pleading); <u>Metzler Inv. GMBH</u>

28 | <u>v. Corinthian Colleges, Inc.</u>, 540 F.3d 1049, 1072 (9th Cir. 2008)

1  (court's discretion to deny leave to amend is "particularly broad

2  where plaintiff has previously amended the complaint") (citation and

3  internal quotations omitted); Sisseton-Wahpeton Sioux Tribe v. United

4  States, 90 F.3d 351, 355-56 (9th Cir.), cert. denied, 519 U.S. 1011

5  (1996) (refusing to grant leave to amend where proposed claim was

6  similar to those in dismissed pleading); Fidelity Fin. Corp. v. Fed.

7  Home Loan Bank of San Francisco, 792 F.2d 1432, 1438 (9th Cir. 1986),

8  cert. denied, 479 U.S. 1064 (1987) (denying leave to amend where

9  plaintiff simply restated its prior, dismissed claims "under new

10  labels"); Plumeau v. School District #40, County of Yamhill, 130 F.3d

11  432, 439 (9th Cir. 1997) (denial of leave to amend appropriate where

12  further amendment would be futile).

13

14  **III.  The Public Employee Defendants Are Immune From Liability for**

15      **Malicious Prosecution.**

16

17  As the Court previously advised Plaintiff in the October 8, 2009

18  Memorandum and Order, under California Government Code section 821.6,

19  "[a] public employee is not liable for injury caused by his

20  instituting or prosecuting any judicial or administrative proceeding

21  within the scope of his employment, even if he acts maliciously and

22  without probable cause."  A "public employee" is an employee of a

23  public entity such as the state, a city or a county.  See Cal. Gov't

24  Code §§ 811.2, 811.4.  Hence, the Defendant public employees are

25  immune from suit for malicious prosecution.  See Blankenhorn v. City

26  of Orange, 485 F.3d 463, 488 (9th Cir. 2007) (holding, however, that

27  section 821.6 does not immunize public employees for tortious conduct

28  occurring during an arrest); Poppell v. City of San Diego, 149 F.3d

1  951, 970 (9th Cir. 1998) (zoning official immune from liability for
2  infliction of emotional distress for referring alleged zoning
3  violations to city attorney for prosecution); Martinez v. City of Los
4  Angeles, 141 F.3d 1373, 1379 (9th Cir. 1998) (under section 821.6, a
5  police officer may not be held liable for malicious prosecution).
6
7      Nevertheless, Plaintiff again pleads malicious prosecution claims
8  against Favis, Ferris, Staal, Lawrence, Bridgewater and McKerren.
9  Because Plaintiff cannot plead a cognizable malicious prosecution
10 claim against these Defendants, the malicious prosecution claim
11 alleged in the First Amended Complaint must be dismissed without leave
12 to amend as against Defendants Favis, Ferris, Staal, Lawrence,
13 Bridgewater and McKerren.  See Zucco Partners, LLC v. Digimarc Corp.,
14 552 F.3d at 1007; Metzler Inv. GMBH v. Corinthian Colleges, Inc., 540
15 F.3d at 1072; Sisseton-Wahpeton Sioux Tribe v. United States, 90 F.3d
16 at 355-56; Fidelity Fin. Corp. v. Fed. Home Loan Bank of San
17 Francisco, 792 F.2d at 1438; Plumeau v. School District #40, County of
18 Yamhill, 130 F.3d at 439.
19
20                          **CONCLUSION AND ORDER**
21
22     The RICO claims in the First Amended Complaint are dismissed
23 without leave to amend.  The malicious prosecution claim in the First
24 Amended Complaint is dismissed without leave to amend as against
25 Defendants Favis, Ferris, Staal, Lawrence, Bridgewater and McKerren.
26 The First Amended Complaint otherwise is dismissed with leave to
27 amend.
28 ///

                                   26

If Plaintiff still wishes to pursue this action, he is granted thirty (30) days from the date of this Memorandum and Order within which to file a Second Amended Complaint.  The Second Amended Complaint shall be complete in itself.  It shall not refer in any manner to any prior complaint.  The Second Amended Complaint may not contain any claim dismissed without leave to amend in this Memorandum and Order.  Plaintiff may not add Defendants without leave of court. See F. R. Civ. P. 21.  Failure to file timely a Second Amended Complaint may result in the dismissal of this action.

IT IS SO ORDERED.

DATED:  ___NOV. 16, 2009___.

_____
MANUEL L. REAL
UNITED STATES DISTRICT JUDGE

PRESENTED this 9th day of

November, 2009, by:

_____
CHARLES F. EICK
UNITED STATES MAGISTRATE JUDGE